**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

GREGORY D. ASHFORD,        :

                           :    Civil Action No. 06-2863 (JAP)

        Petitioner,    :

                           :

        v.           :    **OPINION**

                           :

STATE OF NEW JERSEY, et al.,  :

                           :

        Respondents.   :

**APPEARANCES:**

      GREGORY D. ASHFORD, Petitioner <u>Pro</u> <u>Se</u>
      # 437578/343449C
      Southern State Correctional Facility
      P.O. Box 150
      Delmont, New Jersey 08314

      HILLARY KARA HORTON, ESQ.
      Office of the New Jersey Attorney General
      R. Hughes Justice Complex
      P.O. Box 086
      Trenton, New Jersey 08625
      Counsel for Respondents

**PISANO,** District Judge

    This matter is before the Court on Petitioner Gregory D. Ashford's petition for habeas corpus relief under 28 U.S.C. § 2254.  For the reasons discussed below, the petition for habeas corpus relief will be denied for lack of merit.

I.  UNDERLINE BACKGROUND

A.  Statement of Facts

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its November 17, 2004, unpublished Opinion on petitioner's direct appeal from his conviction:

> Many of the essential facts, as they emerged at trial, were aptly summarized by another panel of this court in addressing the appeal of Ashford's co-defendant, Michael Akins:
>
> The facts are not complicated and emerge from the trial. Around 2:00 p.m. on the morning of May 4, 2001, Manuel Marchaney arrived home, which was located three houses down from the corner of Lee and Ellen Streets in New Brunswick. As he was about to alight from his car, two African-American males later identified as the defendant [Akins] and a co-defendant [Ashford] approached him to ask the time.  As Marchaney looked at his watch, the co-defendant pulled out a silver gun and pointed it at Marchaney's head.  The co-defendant demanded money and when Marchaney reached for his wallet he was struck on the head with the gun.  Marchaney dropped to his knees and defendant reached into his back pocket and took his wallet.
>
> The perpetrators ran away in the direction of Lee Street. Marchaney went into his house and called 9-1-1.  While still on his cordless telephone, he left his house and began a search of his neighborhood for the men who had robbed him. He found them on Lee Avenue near the open trunk of a Buick looking at his wallet.  The police arrived almost immediately and arrested both men.  Subsequently, police officers found both Marchaney's wallet and the silver handgun.
>
> [State v. Akins, A-2165-02T4 (App. Div., Oct. 15, 2003)(slip op. at 2-3).]

2

The following facts are also relevant to this case.  The
officers who were first called to the scene notice Ashford
walking on Rutgers Street toward Lee Avenue. At that point,
Akins had already been placed under arrest.  Ashford was
arrested when he indicated to police that he was on his way
to Akins' vehicle, which was parked on Lee Avenue.  Police
later found the victim's wallet on the rear tire of a gray
Toyota Camry parked on Rutgers Street near the corner of Lee
and Rutgers.  Officer Goleski testified that he saw Ashford
walking past this car as Ashford approached the corner.  The
gun used in the robbery was found on the rear tire of a car
parked in back of 196 Rutgers Street.  That location was
accessible from Lee Avenue and was approximately twenty feet
away from Akins' car.

There were some contradictions in Marchaney's statements
concerning the appearance of the persons who robbed him.  He
told police that the man who took his wallet was
approximately six feet tall, and that the man who held the
gun was shorter.  He first stated that the taller man had
dreadlocks.  However, when shown a photo array, he
identified a photograph of Ashford wearing his hair in
dreadlocks.  At trial, he testified that Ashford was the
shorter man who held the gun.

Marchaney also initially told the 9-1-1 operator that the
suspects were driving away from the crime scene in a white
Cadillac.  However, later in the same call, he told the
operator that he saw one of the men standing near a blue
Buick, looking through his wallet.  At trial, he explained
that immediately after the robbery he took a cordless
telephone from his house, and as he called 9-1-1, he walked
up Ellen Street toward Lee Avenue in an attempt to track the
robbers.  He first saw a white Cadillac passing on Lee
Avenue and believed it was the getaway car.  However, once
he reached Lee Avenue, he saw the taller of the two
assailants standing next to a blue Buick, and he relayed
that information to the 9-1-1 operator.  He also testified
that the tall man was looking at something on the trunk of
the car.  He surmised that the man was rifling through his
wallet.

(Re6, November 17, 2004 Appellate Division Opinion on direct appeal, at pages 2-5).[1]

B.  Procedural History

Petitioner, Gregory D. Ashford ("Ashford"), along with co-defendant Michael Akins, were indicted by a Middlesex County Grand Jury on August 2, 2001, on the following charges: (Count One) conspiracy to commit armed robbery, and (Count Two) armed robbery.  Ashford also was charged with (Count Three) third degree unlawful possession of a weapon; (Count Four) second degree possession of a weapon for an unlawful purpose; and (Count Five) hindering apprehension of oneself.

Both Ashford and Akins initially were tried before a jury in

---

[1]  The state court record submitted by respondents' counsel, relevant to this matter, is designated by reference to the Respondents' Exhibits ("Re"), as follows:

| | |
|---|---|
| Re1 | Middlesex County Indictment No. 01-08-0829 |
| Re2 | Judgment of Conviction, dated June 10, 2002 |
| Re3 | Petitioner's brief on direct appeal |
| Re4 | Petitioner's pro se supplemental brief on direct appeal |
| Re5 | State's responding brief on direct appeal |
| Re6 | Appellate Division Opinion dated November 17, 2004 |
| Re7 | Petitioner's letter in lieu of a formal petition for certification to the Supreme Court of New Jersey |
| Re8 | New Jersey Supreme Court Order denying certification, June 22, 2005 |
| Re9 | June 4, 2002 trial transcript |
| Re10 | June 5, 2002 trial transcript |
| Re11 | June 6, 2002 trial transcript |
| Re12 | June 7, 2002 trial transcript |
| Re13 | June 10, 2002 trial transcript |
| Re14 | August 9, 2002 motion transcript |
| Re15 | September 6, 2002 motion transcript |
| Re16 | September 16, 2002 sentencing transcript |

February 2002; however, the jury was unable to reach a unanimous verdict and a mistrial was declared.  A second jury trial was held on June 4, 2002 through June 10, 2002, before the Honorable Phillip L. Paley, J.S.C.  Ashford was convicted on Counts One through Four of the indictment and co-defendant Akins was convicted on Counts One and Two.  The jury also found that Ashford was guilty of committing a violent crime pursuant to N.J.S.A. 2C:43-7.2, prior to amendment.

Ashford's counsel moved for a new trial.  On September 6, 2002, Judge Paley denied the motion.  On September 16, 2002, Judge Paley sentenced Ashford to ten years in prison with 85% parole ineligibility on the armed robbery conviction (Count Two), a concurrent four year prison term on the conspiracy conviction (Count One), a concurrent four year prison term on the unlawful possession of a weapon conviction (Count Three), and a concurrent five year prison term on the possession of a weapon for an unlawful purpose conviction (Count Four).

Thereafter, Ashford directly appealed his conviction and sentence to the Superior Court of New Jersey, Appellate Division. In an unpublished opinion issued on November 17, 2004, the Appellate Division affirmed the conviction, but remanded the matter for resentencing with respect to the imposition of a fine. The Supreme Court of New Jersey denied certification on June 22, 2005.  Ashford did not file any motions for post-conviction relief in state court.

Ashford filed this petition for habeas relief under 28 U.S.C. § 2254, on or about June 18, 2006.  Respondents answered the petition on January 2, 2007, and provided this Court with a copy of the relevant state court record for habeas review. Ashford did not file any traverse or objections to the State's answer.

## II.   STATEMENT OF CLAIMS

In his habeas petition, Ashford raises the following four claims for habeas relief:

Ground One:  Prosecutorial misconduct during summation in which the prosecutor made improper remarks and knowingly presented false and misleading evidence.

Ground Two:  The trial judge failed to instruct the jury that prior inconsistent statements could be used to impeach the credibility of witnesses.

Ground Three:  The trial judge's failure to give a jury charge on "mere presence" deprived petitioner of a fair trial.

Ground Four: The State failed to establish its burden of proof and the trial court failed to protect petitioner's right to a fair trial.

The State answered the petition asserting that petitioner has failed to exhaust all available state court remedies.  28 U.S.C. § 2254(b).  Alternatively, the State contends that petitioner's claims are without merit or do not state a

6

cognizable federal claim involving a federal constitutional violation.

### III.   EXHAUSTION ANALYSIS

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."  28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

The exhaustion doctrine is a "total" exhaustion rule.  That is, "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]." Lundy, 455 U.S. at 522.  At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions.  The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions,[2] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'"  Crews v. Horn, 360 F.3d 146, 151 (3d

---

[2] See 28 U.S.C. § 2244(d).

Cir. 2004) (quoting <u>Zarvela v. Artuz</u>, 254 F.3d 374, 379 (2d Cir.), <u>cert. denied</u>, 534 U.S. 1015 (2001)).  Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court.  "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition."  <u>Crews</u>, 360 F.3d at 151.  Indeed, the Court of Appeals for the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action."  <u>Crews</u>, 360 F.3d at 154.

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in <u>Crews</u>.

> [S]tay and abeyance should be available only in limited circumstances.  ...  [S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> ...
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.  In such circumstances, the district court should stay, rather than dismiss, the mixed petition.  ...  For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and

> abeyance is inappropriate, the court should allow the
> petitioner to delete the unexhausted claims and to
> proceed with the exhausted claims if dismissal of the
> entire petition would unreasonably impair the
> petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations omitted).[3]

Here, respondents have elected to assert the defense of failure to exhaust and have asked this Court to dismiss Ashford's mixed Petition.  (Answer at ¶ 12).  Specifically, respondents assert that Ashford did not raise Grounds One and Four in his petition for certification to the New Jersey Supreme Court. However, it is clear that these claims were presented in Ashford's pro se supplemental brief on direct appeal, although the Appellate Division did not expressly rule on the claims in its November 17, 2004 decision.  Rather, the Appellate Division found that the claims raised in Ashford's pro se supplemental brief were without merit to warrant discussion in a written opinion.  (Re6, November 17, 2004 Appellate Division Opinion at page 3).

---

[3] Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations.  "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back."  Id. at 278.  See also Crews, 360 F.3d at 154 ("If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court.  If a petitioner fails to meet either time-limit, the stay should be vacated nunc pro tunc.") (citations omitted).

Nevertheless, to the extent that these two habeas claims were not exhausted, this Court observes that, pursuant to 28 U.S.C. § 2254(b)(2), it has the authority to deny the habeas petition on the merits even if petitioner failed to exhaust the remedies available to him in state court.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Duncan v. Walker, 533 U.S. 167, 203 n.6 (2001)(noting that under § 2254(b)(2), a district court may deny non-exhausted, non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003)(same).  Accordingly, this Court is inclined to follow § 2254(b)(2) and review all claims asserted because they are plainly without merit.

IV.   STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Because petitioner is a pro se litigant, the

Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  Williams, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the

state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable

12

Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such *de novo* review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See

13

also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

### V.   ANALYSIS

The Court will examine each of petitioner's claims on the merits, pursuant to the standard of review as recited above.

### A.   Prosecutorial Misconduct During Summation

In Ground One of his petition, Ashford alleges that the prosecutor made a remark to the jury during summation that she knew was false. This remark disputed any statement by witness Marchaney that the tall guy had dreadlocks and not Ashford. Ashford contends this improper and false remark was unjust and designed to conceal the truth, denying his right to a fair trial.

A reading of the trial transcript shows that at no time during his direct examination did the witness Marchaney testify

that the taller one of the two robbers had dreadlocks.  Marchaney testified that one culprit had dreadlocks, and he also testified that the one with the gun had dreadlocks.  (Re10 54-15-25; RE10 70:15-71:9).  However, on cross-examination by co-defendant Akin's counsel, Marchaney testified inconsistently about who had the dreadlocks, as follows:

> Q:   Mr. Marchaney you said on direct before that the tall guy had corn rows in his hair, correct?
>
> A:   I don't understand what you are saying.
>
> THE COURT:     He said dreadlocks.
>
> Q:   The tall guy had dreadlocks, correct?
>
> A:   Excuse me, say that again, the dreadlocks?
>
> THE COURT:     When you testified before did you refer to one of the two men as having dreadlocks?
>
> A:   Yes.
>
> THE COURT:     Which one?
>
> A:   The tall one.

(Re10 113:14-114:1).

Later testimony in the trial by Officer Robert Shine, Jr., of the New Brunswick Police Department, confirmed that the police report had a description of Ashford as being 5'6" tall with twisted hair, and Akins as being 6' tall with a mild afro.  (Re10 146:3-15).

During summation, the prosecutor stated:

MS. MCKINNEY:  Now, Mr. Marchaney gave the following
description to you of what they looked like while they were
in his driveway.

Now, this is not only, it's a combination of what he gave to
you in terms of testimony from up here on the witness stand
as well as what he told that dispatcher that night.

So, he says that the one man, the shorter of the two, and he
says he's five-eleven, so that's how he's gauging the
height, the shorter of the two is about five eight or five
nine, that he has dreadlocks that looks twisted up, that are
about one to one and a half inches long.

MR. VENTURI: Judge, I object to that statement.  That is
totally false and misleading to the jury and the transcript
of Mr. Marchaney's testimony will show he never said that
about the shorter man and always said that about the taller
man.

THE COURT: I overrule the objection.  Mr. Venturi.  The jury
will rely on its own recollection.  The jury must rely on
its recollection of the evidence.  I intend to tell the jury
as I have done after every summation that it is their
recollection which governs and that the summation is not
evidence.  Thank you.

(Re12 87:3-88:1).

Defense counsel also had objected to the prosecutor's use of

a power-point presentation during summation, mainly because he

believed the prosecutor incorrectly referred to Marchaney's

testimony as having stated the shorter man, or petitioner, had

dreadlocks.  Counsel argued: "That is entirely false and contrary

to the testimony of Mr. Marchaney who indicated on certainly

several occasions that the taller guy had the dreadlocks and he

was certainly [sic] of it."  (Re12 75:18-24).

The prosecutor countered that her recollection of

Marchaney's testimony was that he said the shorter man had

16

dreadlocks and the taller one had a short afro.  Marchaney "sees the photos again and identifies the photo array indicating that the shorter one with the gun had the dreadlocks or twists and the taller one had the afro and only on cross examination after being led down the garden path does he, after saying a series of yeses does he say in response to a question that the taller one had the dreadlocks and the shorter one had the afro."  (Re12 77:16-78:1).

The trial court allowed the power point presentation, including the part stating that the short suspect had dreadlocks, and noted that the prosecutor was entitled to rely on her recollection of the evidence, but the jury would be instructed that it was their independent recollection of the evidence that would control.  (Re12 79:9-19).[4]  The court did give a thorough instruction to the jury on this point.  (Re12 87:22-88:1; 100:21-25; 114:21-115:6).  Moreover, at the beginning of her summation, as a prelude to her introduction of the power-point presentation, the prosecutor likewise told the jury: "... our recollection of the facts is not what's binding, it's not what's controlling here.  It's your recollection of the facts."  (Re12 83:25-84:9).

---

[4]     THE COURT: ...  with respect to the question of which
        of the perpetrators possessed the dreadlocks, the State
        is permitted to comment on evidence.  If the State errs
        the jury has been told and will be told that it is
        their recollection which governs.  It is only Mr.
        Venturi and Mr. Toto's recollections after all that is
        being relied upon to have this Court make a ruling to
        strike one of the slides.  (Re12 79:9-15).

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial. Id. at 220. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context." United States v. Young, 470 U.S. 1, 11 (1985).

However, the U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).

"Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in

18

light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

When a prosecutor's opening or closing remarks are challenged in a habeas petition, again, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly</u>, 416 U.S. at 643).  In determining the likely effect of improper comments, a court may consider whether the comments were responsive to or invited by prior comments made by opposing counsel.  <u>Darden</u>, 477 U.S. at 181-82.  "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

This Court finds that the prosecutor's comments about her recollection of Marchaney's testimony during summation, and the one slide on this issue, to which defense counsel objected at trial, were within the realm of fair comment.  Moreover, these comments did not have the capacity on their own to so infect the

trial with unfairness as to make the resulting conviction a denial of due process.  The trial judge repeatedly and properly instructed the jury that it was their recollection of the evidence that controls, and not the recollections made by the prosecutor and counsel.

Therefore, the Court finds no error of constitutional dimension with respect to Ashford's claim of prosecutorial misconduct during summation.  The remarks by the prosecutor about which suspect had dreadlocks did not serve to infect the trial with unfairness, thus depriving petitioner of due process.  Moreover, the Appellate Division found that this claim raised by Ashford in his supplemental brief was without merit to warrant discussion in a written opinion.  (Re6, November 17, 2004 Appellate Division opinion, at page 3).  The state court's ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts presented in the state court proceedings.  Accordingly, this claim will be denied.

B.  <u>Jury Instruction Claims</u>

In Grounds Two and Three of his petition, Ashford claims that the trial judge failed to properly instruct the jury on certain issues, which deprived petitioner of a fair trial. First, Ashford argues that the trial court should have instructed the jury that prior inconsistent statements could be used to

impeach the credibility of witnesses.  Ashford contends that such
charge was critical given the inconsistent testimony by the
state's main witness and victim, Marchaney.  Ashford's counsel
requested an appropriate charge, but the trial court gave "a
confusing, truncated version of the model charge that limited the
juror's use of prior inconsistent statements to "substantive"
evidence of the facts and did not instruct [the jurors] that they
could also use prior out-of-court inconsistencies to impeach
credibility."  (Petition, Ground Two).

Ashford also claims that the trial judge failed to charge
the jury on his "mere presence" at the scene, which instructs
that one's presence at the crime scene does not make one a
participant in the crime.  He argues that this charge is "usually
given in the context of conspiratorial or accomplice liability."
(Petition, Ground Three).

These claims were raised in Ashford's direct appeal.  The
Appellate Division held:

> During the trial, defense counsel requested a charge
> concerning inconsistent statements affecting credibility.
> However, prior to the charge conference, the judge provided
> counsel with a copy of the charge he proposed to give the
> jury, and neither counsel objected to the absence of this
> specific language.  It is clear to us that Ashford's counsel
> reviewed the charge carefully and in detail, because he
> objected to other portions of the proposed charge, and
> requested additional language.  For example, the trial judge
> added a cross-racial identification charge at defense
> counsel's request.  See State v. Cromedy, 158 N.J. 112
> (1999).  Further, even after the judge charged the jury,
> defense counsel requested additional charging language
> concerning other issues, and the court responded by giving a

supplemental charge.  Moreover, counsel did not raise this
issue in the motion for a new trial.

It is clear to us that experienced trial counsel went over
the charge with the proverbial fine-tooth comb and did not
object to the absence of the specific provision at issue on
appeal.  Under these circumstances, we conclude that
defendant must establish that the absence of the specific
language at issue constituted plain error that was clearly
capable of producing an unjust result.  R. 2:10-2; State v.
Afanador, 151 N.J. 41, 54 (1997).

Having reviewed the entire trial transcript, we conclude
that the omission of the specific language on inconsistent
statements did not constitute plain error.  We find
instructive the observation of this court in State v.
Hammond, 338 N.J. Super. 330 (App. Div.), certif. denied,
169 N.J. 609 (2001), in similar circumstances:

> Having carefully scrutinized the issue as to whether,
> on this record, the absence of a jury instruction
> concerning the use of an inconsistent statement as
> substantive evidence had a prejudicial effect, we
> conclude that with the judge's instructions on
> credibility, the vigorous arguments of defense counsel
> on credibility, and the common sense of the jury, the
> members of the jury were well and amply equipped to
> deal with such inconsistencies.
>
> [Id. At 341.]

In this case, as in Hammond, the trial judge gave the jury
the complete general charge concerning the evaluation of
witness credibility.  Unlike Hammond, the judge omitted the
portion of the specific charge on inconsistent statements
that concerned credibility, but he instructed the jury that
a prior inconsistent statement could be considered for its
truth.  However, in this case, the latter instruction was
most significant in the context of the theory presented by
the defense.

In both his opening statement and summation, Ashford's
counsel emphasized that Marchaney was a sympathetic witness
who was trying to be truthful, but who was mistaken in his
trial testimony.  Counsel stated that "Mr. Marchaney is a
good guy.  He's a trustworthy guy ... but his identification
is not trustworthy."  Counsel argued that Marchaney's trial
testimony was inaccurate because his accurate first

22

impressions, reflected in his first statements to the police, had been skewed by later events.  Counsel repeatedly referred to Marchaney's statement to the 9-1-1 operator that the assailants were escaping in a "white Cadillac" and his statement to police that the assailants were two "medium height black males."  In other words, defendant's theory was that Marchaney's prior statements were true, and that they exonerated Ashford and Akins, who were of significantly different heights and who were driving a blue Buick.  Counsel also thoroughly and forcefully addressed inconsistencies between Marchaney's prior statements and his trial testimony.  See Hammond, supra, 338 N.J. Super. at 341.

Considering the record as a whole, and the charge as a whole, State v. Gartland, 149 N.J. 456, 473 (1997), we conclude that defendant's reliance on State v. Allen, 308 N.J. Super. 421 (App. Div. 1998) is misplaced.  This case doe not present the multiple, cumulative errors in the charge that were the basis for reversal in Allen.

Moreover, we cannot conclude that the omission of the charge language concerning inconsistency here had "a clear capacity to produce an unjust result."  State v. Hock, 54 N.J. 526, 538 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed. 2d 797 (1970).  The evidence of defendant's guilt was quite strong.  The police found Ashford and Akins on an otherwise deserted street in the early hours of the morning, in the vicinity of the robbery, moments after the crime was committed.  The victim's wallet was found on the rear wheel of a car at the location where the police first observed Ashford standing on Rutgers Street.  The gun was found on the rear wheel of another car twenty feet from Akins' Buick.  The victim, who had seen Ashford from a distance of a foot away, and who followed the robbers from his house after the assault, was immediately able to identify the assailants.  Even if we were to conclude that the plain error standard did not apply, we would conclude that, on this record, the omission was harmless error.  See State v. Wallace, 158 N.J. 552, 558 (1999).

We are equally unconvinced by defendant's contention that the trial judge should have, sua sponte, given the jury a "mere presence" accomplice charge.  Both defense counsel specifically advised the judge that they did not want an accomplice charge.  Moreover, the charge would have been inapplicable in light of the facts as defendants contended them to be.  This was not a situation in which either

defendant was claiming to have innocently happened on the scene and been erroneously accused of being an accomplice of the other.  Rather, both defendants contended that they were innocently trying to change a flat tire when the police arrested them for a robbery they did not commit.

(Re6, November 17, 2004 Appellate Division Opinion, at pages 6-10).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

[t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis. Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

Here, the Appellate Division evaluated the entire trial record and jury charge and found that the omission of specific language on inconsistent statements was not plain error, and did

not have the capacity to produce an unjust result.  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  Specifically, in this case, the Appellate Division determined that the trial court's instruction on using inconsistent statements to determine the truth was in line with the defense strategy, which emphasized Marchaney's attempt to be truthful but his identification was simply mistaken.  Indeed, the defense was arguing that Marchaney's first statements were true, which would exonerate petitioner if believed by the jury. Consequently, the omission of the language now sought by petitioner (and which appeared to be abandoned by defense counsel by choice, since counsel requested additional charges on other issues) was plainly harmless.

Similarly, the omission of a jury charge on "mere presence" was not prejudicial to Ashford.  Both defense attorneys specifically rejected any charge on accomplice liability, and the facts as asserted by the defendants rendered such a charge on "mere presence" inapplicable.

Thus, after carefully reviewing the trial transcripts, this Court finds that any error as asserted by Ashford in omitting these specific jury charges was plainly harmless in light of the overall record.  As determined by the Appellate Division, "[t]he evidence of [Ashford's] guilt was quite strong."  Moreover, this

Court finds that the thorough decision of the Appellate Division on these issues of omitted jury instructions is neither contrary to nor an unreasonable application of the applicable federal law, nor is the decision based upon an unreasonable determination of fact.  Accordingly, Ashford is not entitled to relief on these claims.

C.   The State Sustained Its Burden of Proof

In his last claim, at Ground Four, Ashford contends that the State failed to carry its burden of proving his guilt beyond a reasonable doubt, and consequently, the trial court failed to protect Ashford's right to a fair trial.  Specifically, Ashford argues that he was to be deemed innocent until proven guilty beyond any reasonable doubt.

The State counters that the trial court properly charged the jury on the State's burden of proof.  Moreover, Ashford fails to demonstrate that his conviction was obtained in violation of the Constitution.

Having reviewed the entire trial record, this Court finds no merit to petitioner's claim.  Indeed, the trial court gave a specific instruction as to the State's burden of proof, that did not serve to shift the government's burden as alleged by petitioner.  The trial judge charged the jury as follows:

> Mr. Ashford and Mr. Akins have pleaded not guilty to the seven charges here, five and two.  They are, therefore, presumed to be innocent unless each and every element of an offense charge is proved beyond a reasonable doubt a

27

> defendant must be found guilty of that offense.  The burden
> of proving each element of a charge beyond a reasonable
> doubt rests upon the State, that burden never shifts to the
> defendant or a defendant.  A defendant has no obligation or
> duty to prove his innocence or offer any proof related to
> his innocence.

(Re12 120:19-121:3).  Moreover, the Appellate Division expressly

found that the evidence of Ashford's guilt was "quite strong."

Therefore, there is no basis for Ashford's bald claim that the

trial court deprived him of a fair trial in this instance.  The

trial judge gave a clear and specific charge on the State's

burden of proof that defendants were to be presumed innocent

unless proven guilty beyond a reasonable doubt.  The jury

determined, based on the evidence at trial, that the State

carried its burden of proof.  Accordingly, this claim is

completely without merit and will be denied.

## IV.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of

appealability should issue.  See Third Circuit Local Appellate

Rule 22.2.  The Court may issue a certificate of appealability

only if the petitioner "has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For

the reasons discussed above, this Court's review of the claims

advanced by petitioner demonstrates that he has failed to make a

substantial showing of the denial of a constitutional right

necessary for a certificate of appealability to issue.  Thus,

this Court declines to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c)(2).

28

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.   An appropriate Order follows.


/s/ Joel A Pisano
JOEL A. PISANO
United States District Judge

Dated: July 3, 2007